## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## CENTRAL DIVISION

DEBRA JACOBS                                                      PLAINTIFF

V.                                   No. 4:22-CV-283-JM-JTR

KILOLO KIJAKAZI, Acting Commissioner,
Social Security Administration                                    DEFENDANT

## <u>RECOMMENDED DISPOSITION</u>

This Recommended Disposition ("Recommendation") has been sent to United States District Judge James M. Moody, Jr. Either party may file written objections to this Recommendation. If objections are filed, they should be specific and should include the factual or legal basis for the objection.

To be considered, objections must be received in the office of the Court Clerk within 14 days of this Recommendation. If no objections are filed, Judge Moody may adopt this Recommendation without independently reviewing the record. By not objecting, parties may also waive the right to appeal questions of fact.

## I.   Introduction

On December 9, 2019, Plaintiff Debra Jacobs ("Jacobs") filed a Title II application for a period of disability and disability insurance benefits. (Tr. at 12). In the application, she alleged disability beginning on October 16, 2019. *Id*. In a written decision dated May 19, 2021, an administrative law judge ("ALJ") denied the application. (Tr. at 28). The Appeals Council subsequently denied Jacobs's request

for review on February 7, 2022. (Tr. at 1–5). Thus, the ALJ's decision now stands as the final decision of the Commissioner. Jacobs has requested judicial review of the Commissioner's decision.

For the reasons stated below, this Court should reverse the final decision of the Commissioner and remand for further review.

## II.   The Commissioner's Decision

First, the ALJ found that Jacobs had not engaged in substantial gainful activity since the alleged onset date of October 16, 2019.[1] (Tr. at 14). At Step Two, the ALJ determined that Jacobs has the following severe impairments: (1) lumbar radiculopathy; (2) ankylosing spondylitis; (3) bilateral patellofemoral syndrome; and (4) morbid obesity. *Id*.

At Step Three, the ALJ determined that Jacobs's impairments did not meet or equal a listed impairment.[2] (Tr. at 17). Before proceeding to Step Four, the ALJ determined that Jacobs had the residual functional capacity ("RFC") to perform

---

[1]   The ALJ followed the required five-step sequence to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 CFR §§ 404.1520(a)–(g), 416.920(a)–(g).

[2]   20 CFR Part 404, Subpart P, App'x. 1 (20 CFR §§ 404.1520(d), 404.1525, and 404.1526).

work at the light exertional level, with the additional limitation that she could no more than occasionally stoop, crouch, climb, and balance. *Id*.

At Step Four, the ALJ determined that Jacobs is capable of performing past relevant work as a personnel manager, personnel clerk, or cashier/checker.[3] (Tr. at 27). Therefore, the ALJ concluded that Jacobs was not disabled. (Tr. at 28).

### III.   Discussion

### A.   Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> Our review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision. Reversal is not warranted, however, merely because substantial evidence would have supported an opposite decision.

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

---

[3] The ALJ actually contradicted himself in the decision, saying that Jacobs was unable to perform past relevant work, and in the next sentence, that she was able to perform past relevant work. (Tr. at 27–28).

In clarifying the "substantial evidence" standard, in the context of administrative decisions, the Supreme Court has explained that "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence . . . 'is more than a mere scintilla.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*.

### B.   Jacobs's Arguments on Appeal

Jacobs contends that the evidence supporting the ALJ's decision to deny benefits is less than substantial. She argues that: (1) the ALJ should have found migraine headaches to be a severe impairment at Step Two; (2) the ALJ did not properly evaluate her treating provider's headache questionnaire; and (3) she could not return to her past work.[4]

---

[4] A large part of Jacobs's brief consists of wide-ranging arguments that the Social Security Administration's review process and its regulations are unconstitutional. These arguments, however, are without merit, as the regulations governing the benefits adjudication process are well within the agency's exceptionally broad rulemaking authority under the Social Security Act, and Jacobs likewise has not shown a particularized injury caused by any alleged constitutional defects. *See* 42 U.S.C. § 405(a); *see also Harrell v. SSA*, No. 3:22-CV-24-JTR, 2023 WL 2017285, *2 n.4 (E.D. Ark. Feb. 15, 2023) (citing *Heckler v. Campbell*, 461 U.S. 458, 466 (1983); *Bowen v. Yuckert*, 482 U.S. 137, 145 (1987); *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc*., 467 U.S. 837, 842–44 (1984); *Jordan v. Comm'r of SSA*, No. 4:21-CV-359-JM-ERE, 2022 WL 1809719, *6 (E.D. Ark. June 2, 2022)).

Jacobs certainly suffered from migraines. She explained that working and the stress associated with a job made her migraines worse. In November 2018, she continued to experience migraines with vertigo; the migraines did not abate with medication, and her medication was increased. (Tr. at 294–97). She was treated with acetaminophen and muscle relaxers.

In January 2019, Jacobs had to take four days off of work to sleep to alleviate her migraines. (Tr. at 300–03). Her primary care provider ("PCP") wrote a note to her employer saying that she should work no more than seven hours a day to manage her migraine headaches.[5]  (Tr. at 285).

In September 2019, Jacobs returned to her PCP complaining of migraines with more episodes of vertigo. (Tr. at 320). In October 2019, her PCP referred her to physical therapy and recommended she take six weeks off work. (Tr. at 326–29). At a point in 2020, Jacobs's migraines improved, but in April 2020, they had worsened due to a flu-like illness. (Tr. at 694–97).

Jacobs's PCP filled out a Treating Physician Migraine Headache Form on May 5, 2020. (Tr. at 751–52). He noted that Jacobs had more than one migraine per week with a duration of between four and 24 hours. *Id.* He said that Jacobs's

---

[5] Through 2019, Jacobs saw multiple providers for her severe lumbar back pain, which caused positive straight-leg raise and fatigue, swelling, and tenderness. (Tr. at 320, 378–84). Her back pain caused sleep problems, photosensitivity, and caused her to limit her activities. (Tr. at 370–71). Even an hour of standing caused severe pain. (Tr. at 326).

migraines were accompanied by aura, vertigo, nausea, vomiting, photophobia, phonophobia, and throbbing pain. *Id*. He stated that migraines would interfere with Jacobs's ability to work and would cause her to miss about one day per week from work. *Id*. This opinion is consistent with the record of symptoms and treatment.

At Step Two, the ALJ found that Jacobs's migraines were not severe.[6]  This was error. In a similar case from the Western District of Arkansas, the claimant had severe back pain and suffered from migraines. *See Harper v. Kijakazi,* No. 2:21-CV-2109-PKH-MEF, 2022 WL 2708760, *1–*4 (W.D. Ark. June 27, 2022), adopted by *Harper v. Kijakazi*, 2022 WL 2708750 (W.D. Ark. July 12, 2022). Her complaints and treatment were similar to those of Jacobs. *Harper*, 2022 WL 2708760, at *2–*4.

In that case, a treating nurse filled out a Headache Form, stating that the claimant would also miss one day of work per week. *Id*. at *2. Importantly, the Court found that the claimant's back pain impacted the severity of the migraines, and that the ALJ erred by finding the migraines to be non-severe at Step Two. *Id*. at *4–*5. This Court and other courts in this Circuit have drawn the same conclusion regarding the evaluation of migraine headaches for severity at Step Two. *See Morning v. Kijakazi*, No. 4:20-CV-937-JTR, 2022 WL 73757, *2–*3 (E.D. Ark. Jan. 7, 2022);

---

[6] Step Two involves a determination of whether the claimant has an impairment or combination of impairments which is "severe" and meets the duration requirement. 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). If not, benefits are denied. *Id*. A "severe" impairment significantly limits a claimant's ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c); 416.920(c).

*Vancil v. Saul*, 2019 WL 4750443, *2–*3 (E.D. Mo. Sept. 30, 2019); *Skaggs v. Berryhill*, 2017 WL 5592880, *2–*8 (E.D. Mo. Nov. 21, 2017).

Since the ALJ did not find Jacobs's migraines to be severe at Step Two, he did not consider the impairment at Steps Two, Three, or Four. His error meant that there was no evaluation of the effect of migraines on functional capacity. Jacobs's PCP clearly indicated functionality would be limited based on the migraines. Yet, the ALJ did not include any headache-related restrictions in the RFC. (Tr. at 17). The ALJ erred at Step Two.[7]

## IV.   Conclusion

For the reasons stated above, the Court finds that the ALJ's decision is not supported by substantial evidence. The ALJ erred by finding that Jacobs had no severe impairments, and the record was not fully developed.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision be REVERSED and the case be REMANDED for further review.

DATED this 5th day of July, 2023.

_____
UNITED STATES MAGISTRATE JUDGE

---

[7] This error alone requires reversal, but the fact that the ALJ contradicted himself at Step Four also suggests that further administrative review is warranted. (Tr. at 27–28).

7